IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE HARPAGON COMPANY, LLC, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| FXM, P.C., | : | 1:09-CV-1146-TWT-CCH |
| Defendant. | : | |
| | : | |
| KEITH L. THOMPSON, as | : | |
| Administrator of the Estate of Margo T. | : | |
| Thomas; and as Guardian for the minor | : | |
| children D.K.T. and E.A.T., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| HEARTWOOD 11, LLC, VESTA | : | 1:09-CV-1300-TWT-CCH |
| HOLDINGS I, LLC, VESTA | : | |
| HOLDINGS, INC., THE HARPAGON | : | |
| COMPANY, LLC, JOHN E. RAMSEY, | : | |
| ROBERT J. ROHRER, PATRICIA A. | : | |
| HUSSEY, ALEXANDER CLOUD, JR., | : | |
| VERSHA V. CLOUD, DOES 1-5, | : | |
| Defendants. | : | |
| | : | |
| THE HARPAGON COMPANY, LLC, | : | |
| Plaintiff. | : | |
| v. | : | CIVIL ACTION NO. |
| FRANCIS XAVIER MOORE, | : | 1:09-CV-1319-TWT-CCH |
| CORNELIA MOORE, BANK OF | : | |
| ATLANTA, MORTGAGE | : | |
| ELECTRONIC REGISTRATION | : | |
| SYSTEMS, INC., BRANCH BANKING | : | |
| & TRUST COMPANY, | : | |
| Defendants. | : | |

# O R D E R

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the report and recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

IT IS SO ORDERED this 30th day of July, 2009.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE HARPAGON COMPANY, LLC, | : | |
|       Plaintiff, | : | |
|       v. | : | CIVIL ACTION NO. |
| FXM, P.C., | : | 1:09-CV-1146-TWT-CCH |
|       Defendant. | : | |

KEITH L. THOMPSON, as
Administrator of the Estate of Margo T.
Thomas; and as Guardian for the minor
children D.K.T. and E.A.T.,
      Plaintiff,
      v.
HEARTWOOD 11, LLC, VESTA
HOLDINGS I, LLC, VESTA
HOLDINGS, INC., THE HARPAGON
COMPANY, LLC, JOHN E. RAMSEY,
ROBERT J. ROHRER, PATRICIA A.
HUSSEY, ALEXANDER CLOUD, JR.,
VERSHA V. CLOUD, DOES 1-5,
      Defendants.

CIVIL ACTION NO.
1:09-CV-1300-TWT-CCH

THE HARPAGON COMPANY, LLC,
      Plaintiff.
      v.
FRANCIS XAVIER MOORE,
CORNELIA MOORE, BANK OF
ATLANTA, MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., BRANCH BANKING
& TRUST COMPANY,
      Defendants.

CIVIL ACTION NO.
1:09-CV-1319-TWT-CCH

# REPORT AND RECOMMENDATION

The above-styled actions are related in that Nos. 1146 and 1319[1] are actions seeking collection of a judgment awarded by the Superior Court of Clayton County, Georgia in No. 1300. Each case was removed to this court by party Francis X. Moore ("Moore") or his law firm, FXM, P.C. ("FXM"). Motions to remand to state court have been filed in each case. *See* No. 1300 [10] (motion by Harpagon Company, LLC, Heartwood 11, LLC, Vesta Holdings I, LLC, Vesta Holdings, Inc., John E. Ramsey, and Robert J. Rohrer); No. 1300 [14] (motion by Patricia A. Hussey and Terry L. Baskin, adopting the arguments made in No. 1300 [10]); No. 1319 [12] (motion by Harpagon Company, LLC); No. 1146 [7] (motion by Harpagon Company, LLC). Because the arguments made in support of removal are similar in each case; many facts and documents are common to all three cases, and the parties in each case overlap, the Court will consider the motions for remand together in this Order.

---

[1]The Court will distinguish the cases by referring to each by the last four numerical digits of its Civil Action Number.

2

## I.    PROCEDURAL BACKGROUND

### A.    Case No. 1300, the "Underlying Action"

On May 16, 2006, Keith Thompson, acting through his counsel, Francis X. Moore, sole shareholder of the FXM Law Firm, filed a complaint in the Superior Court of Clayton County, Georgia against a group of defendants Plaintiff refers to as "the Vesta/Bank Atlantic Defendants."  No. 1300, Notice of Removal [1] at 2. Approximately three years later, Thompson, through his lawyer, Moore, filed a Notice of Removal seeking to move his state court action to this Court.

In his Notice of Removal, Plaintiff alleges that the Vesta/Bank Atlantic Defendants, along with their affiliates, joint venture parties, attorneys, and other co-conspirators, which he refers to as "the Vesta/Bank Atlantic Enterprise" or, simply, "the Enterprise," had been engaged in the "delinquent ad valorem property tax collection business" for the purpose of unlawfully depriving African-Americans of their homes, property, money and dignity.  *Id.* at 2-3.  The Notice of Removal states that for some time, FXM and Moore "have been enforcing or attempting to enforce the rights of [African-Americans who are either inner-city, poor, elderly, widowed, orphaned, disadvantaged, or uneducated] to, among other things: (a) equal protection

of the law as set forth in and pursuant to the Constitution and laws of the United States including those rights set forth in 42 U.S.C.A. § 1981(a), and (b) petition the government to redress their grievances, a right guaranteed by the First Amendment to the U.S. Constitution." *Id.* at 14.

Thompson's Notice of Removal refers to his Clayton County Superior Court lawsuit as "the Underlying Action," stating that it "presents a typical fact pattern of the cases in which the FXM Law Firm and the firm of Proctor Hutchins and its tax investor enterprise clients oppose each other." *Id.* The Underlying Action[2] arose from a tax sale wherein the No. 1300 Defendants (allegedly members of the Enterprise) purchased a home that was part of the estate of Plaintiff's sister, Margot Thomas. Plaintiff was serving as administrator of Ms. Thomas' estate. *Id.* at 14-15. Plaintiff Thompson claims that the tax sale was void, and alleges that though they were put on notice that it was void, Defendants directed the tenants in the home to cease paying rent to Thompson, and the tenants did so. *Id.* at 15. In order to avoid a lawsuit, Defendants subsequently relinquished any claim to the property. Motion to Remand, No. 1300 [14] at 6. Plaintiff claims, however, that as a result of the tenants ceasing to pay rent upon direction of Defendants, the property was lost at a foreclosure sale.

---

[2]The Court will adopt Plaintiff Thompson's label for the original state court case, now No. 1300 in this court.

4

Notice of Removal at 15-16. Plaintiff filed suit against various members of the Enterprise for, among other claims, trespass, tortious interference, slander of title, and fraud. *Id.*

According to the Notice of Removal, Defendants filed a motion for summary judgment in the Underlying Action that was initially denied by the Clayton County Superior Court. After producing what Plaintiff alleges to be "false and misleading testimony," Defendants moved for reconsideration of the denial of their motion for summary judgment. *Id.* at 16. Plaintiff alleges that the Enterprise blocked the FXM Law Firm's efforts to take the deposition of their newly-proffered witness, and that based on the testimony of that witness, the Clayton County Superior Court granted Defendants' motion for summary judgment. *Id.* at 17.

After procuring summary judgment, Defendants moved for attorney's fees. Pursuant to O.C.G.A. § 9-15-14(a),[3] the trial court entered a judgment for

---

[3]"In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just." O.C.G.A. § 9-15-14(a).

approximately $80,000 against Moore, personally, and FXM.  *Id.*  In his Order awarding the fees, Clayton County Superior Court Judge Matthew O. Simmons wrote that "it appears to the Court that Plaintiff's theory that Harpagon asserted an invalid interest in the property, causing Cloud to withhold rent, and resulting in Plaintiffs' inability to pay the mortgage and a loss of the property by foreclosure is not supported by any evidence in the record."  Order, Civil Action No. 2006 CV 2056-8, Superior Court of Clayton County, Georgia (Sept. 11, 2008), attached to Motion to Remand, No. 1319 [12] at 4.  Judge Simmons further noted a history of litigation between Moore and the Defendants, and concluded that "[this] litigation ensued . . . not because of the merits of the case, but because Moore was looking for a chance to fight the Defendants once again. . .  [T]he whole case could and should have been avoided once Defendants capitulated to the claims of Moore that the tax deed was invalid. " *Id.* at 4, 6.

The Notice of Removal states that Plaintiff noticed an appeal of the trial court rulings, but was unable to post a supersedeas bond.  *Id.* at 18.  "With no bond, the Enterprise began aggressive post judgment collection, garnishing all of the personal (owned jointly with Moore's spouse) and corporate bank accounts of Moore and the FXM Law Firm." *Id.*  Plaintiff alleges that Defendants have taken a number of steps

6

"designed to hinder and impede: (A) the taking or perfecting of an appeal in the Underlying Action; and (B) the further prosecution by the FXM Law Firm and Moore of other property tax collection fraud cases . . ." *Id.* at 20.  Plaintiff further alleges that a motion to compel post-judgment discovery, by which Defendants, among other sanctions, seek to have Moore incarcerated, "is without any basis in law or in fact and has been made in bad faith to coerce, intimidate and retaliate against [FXM] for having the temerity of providing legal services to African-American clients who, but for [FXM], would not be able to hire counsel." *Id.* at 21.

### B.    Case No. 1146, the Petition for Dissolution of FXM

On March 18, 2009, the Harpagon Company, LLC ("Harpagon")[4] filed an action in the Superior Court of Fulton County, Geogia, seeking judicial dissolution of FXM pursuant to O.C.G.A. § 14-3-1430, *et seq*.  *See* Petition for Judicial Dissolution of FXM, P.C., Exhibit A to Notice of Removal, No. 1146 [1].  That action is now before this Court as No. 1146.  The state court petition states that Harpagon is a creditor of FXM, by virtue of the above-mentioned judgment, awarded by the Superior Court of Clayton County against FXM, and asserts that because FXM is

---

[4]Harpagon represents that all of the defendants in the Underlying Action assigned to it their interest in the fee award. Thus, only Harpagon is seeking to collect the award.

insolvent, Harpagon is entitled to a decree of dissolution of FXM pursuant to O.C.G.A. § 14-3-1430(3)(B). Petition for Dissolution at ¶ 4. A Writ of *Fieri Facias* filed on October 23, 2008 in the Superior Court of Clayton County, attached by FXM to its Notice, No. 1146 [2], shows the judgment in favor of the defendants in the Underlying Action against Frank X. Moore and FXM, P.C. in the amount of $79,268.87, for attorney's fees.

Harpagon's Petition for Dissolution requests that the state court (i) issue an injunction to immediately preserve all corporate assets of FXM as provided by O.C.G.A. § 14-3-1431; (ii) appoint a receiver or custodian pendente lite to ensure the preservation of all corporate assets of FXM and to carry on the business of FXM until a full hearing can be held as provided by O.C.G.A. § 14-3-1431; (iii) hold a full hearing, and (iv) enter a decree of dissolution of FXM as provided by O.C.G.A. § 14-3-1433. Petition for Dissolution, Exhibit A to No. 1146 [1]. Moore characterizes Harpagon's attempt at dissolution of FXM as "an act or attempt by Harpagon on behalf of the Vesta/Bank Atlantic enterprise to dissolve, disrupt and dismantle the FXM Law Firm, a professional corporation whose attorneys represent those who have been victimized by Harpagon and its co-conspirators." Notice of Removal, No. 1319 [1], at 24.

8

FXM removed the dissolution action (now No. 1146) to this Court on April 29, 2009, the same day on which a hearing was scheduled in the Superior Court of Fulton County on Harpagon's Motion and Memorandum for Interlocutory Injunction and Receiver Pendente Lite. By that motion, Harpagon sought an order prohibiting FXM from disposing of any corporate assets and further sought the appointment of a receiver pendente lite pursuant to O.C.G.A. § 14-3-1431. *See* Notice of Hearing, No. 1146 [2-8]. Moore states that on April 28, 2009, Harpagon's counsel forwarded to him a proposed order which, if entered, would give another attorney control over FXM and all of its cases, clients, files, and bank accounts. Notice of Removal, No. 1319 [1], at 25.

C.    **Case No. 1319, Petition for Sale of the Moore Residence and Personal Property**

On April 16, 2009, Harpagon filed another action in the Superior Court of Fulton County, against Moore, his wife, and record lenders on the Moores' home, seeking the sale of Moore's home and certain unspecified personal property owned jointly with Moore's wife, Cornelia Moore. Moore removed that action to this Court; it is now No. 1319. In its Complaint, Harpagon asks the state court to: (i) conduct an equitable partition of the "Residence" by causing same to be sold; (ii) conduct an

9

equitable partition of the "Personalty" by causing same to be sold, and (iii) grant such other and further relief to Harpagon as it may be entitled to receive. Exhibit 1 to Notice of Removal, No. 1319 [1]. Moore alleges that Harpagon intentionally served notice of the petition to sell his family home on the date of his birthday. Notice of Removal, No. 1319 [1], at 27.

## II.    DISCUSSION

### A.    <u>Removal of No. 1300, the Underlying Action, was Improper</u>

Plaintiff Keith Thompson's removal of the case now assigned the civil action number 1:09-CV-1300-TWT-CCH to this court was improper. Pursuant to 28 U.S.C. § 1441(a), "[E]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed *by the defendant or the defendants*, to the district court of the United States . . ." 28 U.S.C. § 1441(a) (emphasis added). Similarly, 28 U.S.C. § 1443, cited by Plaintiff, provides that certain actions "commenced in a State court may be removed *by the defendant* to the district court of the United States . . ." 28 U.S.C. § 1443 (emphasis added). As the plaintiff is the master of the complaint and may choose to bring his action in any court having

10

jurisdiction over it, removal by a plaintiff to federal court of an action he chose to file in state court is improper.

Moreover, Plaintiff Thompson seeks to remove an action in which the state court has apparently reached a final judgment. "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476(1983)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). Accordingly, this court does not have jurisdiction over No. 1300 and removal of the case was improper.

For these reasons, **IT IS RECOMMENDED** that Defendants' Motions to Remand, No. 1300 [10] and No. 1300 [14] be **GRANTED**, and that the case numbered 1:09-CV-1300 be **REMANDED** to the Superior Court of Clayton County, Georgia.

**B.**     **Removal of Nos. 1146 and 1319 was Improper**

**1.     Removal cannot be upheld under § 1443(1)**

Case Nos. 1146 and 1319 were commenced in state court by party Harpagon as plaintiff, against FXM (No. 1146) and against Moore (No. 1319).  Accordingly, these actions are eligible for removal by Moore,[5] as defendant, if he is able to establish a statutory basis for such removal.

Harpagon argues that this Court has no jurisdiction over these cases and that they should therefore be remanded to the Superior Court of Fulton County because: (1) there is no diversity of citizenship; (2) the actions are not founded on claims or rights arising under the Constitution, treaties, or laws of the United States, and (3) there is no removal jurisdiction under 28 U.S.C. § 1443 (the "Civil Rights Removal Statute").  Motion to Remand, No. 1146 [7] ("Pl. Mot.") at 2.

---

[5]Because the Court is considering the No. 1146 and No. 1319 motions to remand jointly, it will refer to "Moore" as the defendant in both actions, though No. 1146 was actually brought against Moore's law firm, FXM.

12

In his response, No. 1146 [11], to the No. 1146 motion to remand,[6] Moore does not argue, and has not demonstrated that the actions are based on diversity jurisdiction, or that the actions contain one or more claims arising under the Constitution, treaties or laws of the United States. Accordingly, the Court finds that neither diversity jurisdiction nor federal question jurisdiction exists here. 28 U.S.C. §§ 1441(a), (b), 1331(a). Moore argues that removal of these actions was proper under 28 U.S.C. § 1443, the Civil Rights Removal Statute.

a.    Standard for Upholding Removal Under 28 U.S.C. § 1443

Section 1443(1) provides that any civil action or criminal prosecution commenced in state court may be removed to federal district court if the case is:

> Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.

28 U.S.C. § 1443(1).

Moore argues that removal should be upheld under the standard established by the Supreme Court in *State of Georgia v. Rachel*, 384 U.S. 780 (1966). In *Rachel*, the

---

[6]The Court notes that Harpagon's motions to remand in No. 1146 and No. 1319 are substantially similar, as are Moore's responses.

petitioner and nineteen others sought, pursuant to § 1443(1), to transfer to the United States District Court for the Northern District of Georgia criminal trespass prosecutions pending against them in the Superior Court of Fulton County. 384 U.S. at 782. The petitioners, all African-American, had been arrested in 1963 when they attempted to obtain service at privately owned restaurants in Atlanta. *Id.* at 783. Each was indicted under a Georgia statute making it a misdemeanor to refuse to leave the premises of another when requested to do so by the owner or the person in charge. *Id.* The petitioners alleged that "their arrests were effected for the sole purpose of aiding, abetting, and perpetuating customs, and usages which have deep historical and psychological roots in the mores and attitudes which exist within the City of Atlanta with respect to serving and seating members of the Negro race in such places of public accommodation and convenience upon a racially discriminatory basis . . ." *Id.* at 783. In other words, the petitioners were arrested for trespass solely because they were African-American. The petitioners argued that under § 203 of the Civil Rights Act, as interpreted by *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964), "prosecution of any person for seeking service in a covered establishment, because of his race or color," was prohibited. *Rachel*, 384 U.S. at 785.

14

The Supreme Court considered removal of the case under Section 1443(1). It held that under that section of the statute, the petitioners must show "both that the right upon which they rely is a 'right under any law providing for equal civil rights,' and that they are 'denied or cannot enforce that right' in the courts of Georgia." *Id.* at 788. The Court clarified that "any law providing for equal civil rights" means any law providing for specific civil rights stated in terms of racial equality. *Id.* at 792. The Civil Rights Act of 1964 was held to be such a law.

The Court then addressed whether the petitioners had established that they would be "denied or cannot enforce" their rights in state court. The Court noted the traditional rule that required removing defendants to point to a specific state law that "could be taken as suitable indication that all courts in that State would disregard the federal right of equality with which the state enactment was precisely in conflict." *Id.* at 804. The Court then established a narrow exception to that rule, holding that a firm prediction that a defendant would be denied federal rights in the state court was sufficient to establish the "denial" requirement, even in the absence of a discriminatory state law.

Removal was upheld in *Rachel* because, under § 201 of the Civil Rights Act of 1964, the defendants were "not only . . . immune from conviction under the Georgia

trespass statute, but they ha[d] a right under the Civil Rights Act of 1964 not even to be brought to trial on these charges in the Georgia courts." *Id.* at 794. Thus, the fact that they were being prosecuted in state court for refusing to leave a facility open to the public, when ordered to do so solely for racial reasons, was enough to support the removal of their prosecutions to federal court for dismissal. The key to removal in *Rachel* was that the trespass prosecution itself, though conducted pursuant to a facially neutral state law, violated the Civil Rights Act. *Id.* at 804-805.

On the same day it decided *Rachel*, the Supreme Court also decided *City of Greenwood v. Peacock*, 384 U.S. 808 (1966). In *Peacock*, the Court held that defendants seeking to remove their criminal prosecutions for First Amendment petitioning activity to federal court were not entitled to removal under Section 1443(1) because, though they alleged corruption related to their prosecution, they did not point to a law that, if applied by the state court, would guarantee denial of their federal civil rights. The *Peacock* holding confirmed that *Rachel* presented a narrow exception to the general rule that to gain removal under Section 1443(1), defendants must point to such a law. The Court stated:

> It is not enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, and

16

that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

384 U.S. at 827-828. The *Peacock* court highlighted the differences between that case and *Rachel*, stating that "in *Rachel*, the defendants relied on the specific provisions of a pre-emptive federal civil rights law . . . that . . . specifically and uniquely conferred upon the defendants an absolute right to 'violate' the explicit terms of the state criminal trespass law with impunity." *Id.* at 826. The Court continued that in *Peacock*, no federal law conferred an absolute right to the defendants to conduct the activities for which they were being prosecuted (obstructing a public street, contributing to the delinquency of a minor, driving an automobile without a license, biting a policeman). *Id.* at 826-27.

In *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991), the Eleventh Circuit applied *Rachel* to hold that the case was removable under Section 1443 on the

17

basis of the defendant's counterclaim.  The counterclaim alleged that the state court lawsuit had been brought in an effort "to coerce, intimidate or deter [the defendant] from providing housing in violation of the Fair Housing Act [42 U.S.C. §§ 3604, 3614]."  931 F.2d at 725.  The Court cited *Rachel* for its holding that "removal under § 1443 is proper when a lawsuit filed in state court is itself the act by which the movant's civil rights are violated."  *Id.* at 725 (citing 384 U.S. 780).  The Court also cited *Northside Realty Assoc., Inc. v. Chapman*, 411 F.Supp. 1195 (N.D. Ga. 1976), as applying *Rachel* to hold that lawsuits filed in state court which violate the defendant's rights under the Fair Housing Act are properly removable under § 1443.  931 F.2d at 725.  The *Sofarelli* parties agreed that because the Fair Housing Act prohibited prosecution of a criminal or civil action against a person who had encouraged another to exercise his or her rights under the Fair Housing Act, the action was properly removed to federal court under *Rachel*.  931 F.2d at 725-26.

The Eleventh Circuit again considered § 1443(1) in *Alabama v. Conley*, 245 F.3d 1292 (11th Cir. 2001).  In *Conley*, the African-American defendant in an eminent domain proceeding initiated by Alabama State University ("ASU") as part of a larger land-acquisition process asserted a counterclaim against ASU alleging that it had violated his civil rights by engaging in a conspiracy to enable ASU to favor some

18

property owners over others.  245 F.3d at 1294.  Defendant alleged in his removal petition that the state court judge assigned to the case gave ASU preferential treatment in contemplation of political favors.  *Id.* at 1295.  Defendant sought to remove the eminent domain proceeding to federal court under § 1443(1) because, he contended, "ASU officials, ASU's real estate appraiser, and various state court judges conspired to take his property for less than fair market value and  this scheme resulted in . . . the denial of his rights under the Fourteenth Amendment."  *Id.*

The *Conley* court applied the *Rachel* test, and concluded that the defendant had not met it.  First, the court found that the defendant's claim under 42 U.S.C. § 1981 satisfied the first *Rachel* prong; § 1981 "qualifies under § 1443(1) as a law providing specific civil rights stated in terms of racial equality."  *Id.* at 1296.  The defendant failed, however, to establish the second *Rachel* prong, which requires a showing that the specific civil right will be denied or is unenforceable in state court.

The Court noted that like the trespass statute in *Rachel*, Alabama's eminent domain statute was facially neutral.  The defendant argued that, like in *Rachel*, though the statute was not discriminatory, the filing of the eminent domain action was itself the act by which his federal civil rights had been violated.  Based on the former Fifth Circuit's ruling in *Sunflower County Colored Baptist Ass'n v. Trustees of Indianola*

*Mun. Separate Sch. Dist.*, 369 F.2d 795, 795-96 (5th Cir. 1996), the court rejected this argument.  The *Conley* court noted that the *Sunflower County* court quoted *Peacock* as stating that allegations of corruption or unfairness preceding or during a particular court proceeding do not support removal under § 1443(1).  *Conley*, 245 F.3d at 1297. The *Conley* court further relied on *Sunflower County*'s holding that "the [defendants'] claim that their federal civil rights will be denied must be based on the state constitution, a statute, municipal ordinance, rule of court or regulatory provision binding on the court which expressly deny such federal rights," and that the eminent domain statute at issue did not "precisely conflict[] and conclusively den[y] the federal rights of the [defendant]." *Id.* (quoting 369 F.2d at 797-98).  The *Conley* court concluded that, "[u]nlike the Civil Rights Act of 1964 in *Rachel*, neither § 1981 or § 1985(3) contains specific provisions that immunize Conley from the precise type of proceeding being brought in state court." *Id.*

Based on the precedent outlined above, the Court must determine whether, under *Rachel*, Moore has established that a firm prediction can be made that the state court actions to collect the judgment held against him by Harpagon will "conclusively deny" his federal rights.

20

b.    <u>Moore's Argument</u>

Moore's argument is based on his claim that "the Petition for Dissolution and other so-called post-judgment collection activities are blatant attempts by the enterprise to deprive these targeted citizens [Moore's clients] of the benefits of one of the very few experienced counsel who are capable and competent in the esoteric area of *ad valorem* property tax collection fraud."   In this way, Moore claims, Harpagon is allegedly violating the rights held by the clients under 42 U.S.C. § 1981(a).  Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Moore argues that the Enterprise that was his target in the Underlying Action "has routinely and systematically denied African-Americans the protection of 42 U.S.C. § 1981."  Pl. Br. at 12.

Moore further argues that by the collection actions, Harpagon is seeking to deny his clients of their right to the full and equal benefit of the law by depriving them of

21

experienced counsel.  Because Moore is "seeking to provide his African-American clients the benefit of these civil rights statutes," he argues that removal was proper under 28 U.S.C. § 1443(1).

Section 1443 allows for removal of a case that is "*against* any person who is denied . . . a right under any law providing for the equal civil rights of citizens of the United States."   Because cases No. 1146 and No. 1319 are "against" Moore and his law firm, not his clients, Moore cannot assert the deprivation of his clients' rights under § 1981 as the basis for removal under § 1443(1).

Recognizing this, Moore argues that it is not the denial of his clients' rights, but Harpagon's attempt to retaliate against Moore for enforcing, or attempting to enforce the rights of his African-American clients that provides the civil rights violation that should serve as the basis for upholding removal.  Moore asserts that by bringing this action to collect the state court judgment, Harpagon is conspiring with other members of the Enterprise to impede his attempts to enforce the rights of his clients.  Thus, Moore argues, Harpagon's suits violate his civil rights under 42 U.S.C. § 1985 and are therefore eligible for removal under § 1443(1).  42 U.S.C. § 1985 provides:

> [I]f two or more persons conspire for the purpose of impeding,
> hindering, obstructing, or defeating, in any manner, the due course of

> justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2), (3).

In *Alabama v. Conley*, because neither the Supreme Court nor the Eleventh Circuit had addressed whether § 1985(3) meets *Rachel*'s definition of an equal civil rights statute under § 1443(1), the court assumed without deciding that it did. This Court will do the same. Assuming that Moore has pointed to a statute that grants him a specific civil right (not to be impeded, etc. in his attempts to enforce the rights of his clients under § 1981) by invoking § 1985, the Court turns to whether Moore has met the second *Rachel* prong by showing that this right will be denied or cannot be enforced in the state court.

The Court looks to a Third Circuit case, *Davis v. Glanton*, 107 F.3d 1044 (3rd Cir. 1997), for guidance. In *Davis*, the defendants attempted to remove a defamation action brought against them in state court, which they claimed was brought in retaliation for a federal civil rights complaint the defendants had recently filed against the defamation plaintiffs. 107 F.3d at 1045-46. The defendants argued that "the filing

23

of the state court defamation action was an act in furtherance of a racially motivated conspiracy to deny them their equal civil rights" as guaranteed by 42 U.S.C. § 1985(3). *Id.* at 1049. Under the second *Rachel* prong, the *Davis* court examined the defendants' claim that the state court defamation action was brought in violation of their federal civil rights under § 1985(3), and concluded that "it is clear that nothing in § 1985(3) . . . immunizes the [defendants] from civil state court defamation actions, and that they fail to fit within the limited exception set forth in *Rachel*." *Id.* at 1051. The *Davis* court went on to quote Justice Marshall's dissent in *Johnson v. Mississippi*, 421 U.S. 213 (1975), in which he explained the line between *Rachel* and *Peacock*, which is the line:

> between 'prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the petitioner, and prosecutions where the only grounds for removal is that the charge is false and motivated by a desire to discharge the petitioner from exercising or to penalize him for having exercised a federal right.'

107 F.3d at 1051 (quoting *Johnson v. Mississippi*, 421 U.S. 213, 234 (1975) (Marshall, J., dissenting)).

The *Davis* court concluded that "[e]ven if the [defendants] are correct in their assertions concerning the [plaintiffs'] retaliatory motivation, their case clearly falls

24

into the latter category, and as such, outside the narrow exception identified by *Rachel*." *Id.*

This case is analogous to *Davis*, and the Court agrees with the reasoning of the Third Circuit. Like the removing defendants in *Davis*, Moore is claiming that the various collection actions brought against him in state court by Harpagon are motivated by a desire to intimidate him and to impede and punish his representation of his African-American clients. Also like the *Davis* defendants, however, Moore has failed to show that § 1985 immunizes him from the collection of a judgment entered against him by the state court. Thus, even if he is correct that Harpagon is attempting to retaliate against him and to stop him from representing other African-American plaintiffs in claims against the Enterprise, his argument fails; he has not satisfied the second *Rachel* prong by showing that the filing of a state court action for collection is, by itself, contrary to a specific federal equal civil rights statute.

Moore's claim that this case is analogous to *Sofarelli v. Pinellas*, 931 F.2d 718 (11th Cir. 1991), outlined above, and *Northside Realty Associates v. Chapman*, 411 F.Supp. 1195 (N.D. Ga. 1976), is rejected. In *Sofarelli* and *Northside*, the defendants were able to point to a specific federal law, the Fair Housing Act, which prevented prosecution of any person "on account of his having aided or encouraged any other

person in the exercise or enjoyment of any right granted" by the Act. *Northside Realty*, 411 F. Supp. at 1198 (citing 42 U.S.C. § 3617). Thus, the filing of the suit itself in each of those cases violated the defendants' civil rights. As in *Davis*, Moore "cannot avail [himself] of such a provision, for § 1985(3) does not immunize [him]" from civil actions to collect a state court judgment. *Davis*, 107 F.3d at 1051.

For these reasons, the Court concludes that Moore, and FXM, have not met the narrow requirements of the second prong of *Rachel*. Removal of the collection actions, Nos. 1146 and 1319, is not warranted by the concern that a denial of civil rights may take place and go uncorrected by the state court. *See Davis*, 107 F.3d at 1051. As the *Davis* court recognized, "an analysis of that sort would require this Court to second-guess the impartiality of our state court brethren, and this outcome is exactly what the court in *Rachel* and *Peacock* counseled against." *Id.* "Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Peacock*, 384 U.S. at 827-828. Since that element is missing, removal of this case can not be upheld under § 1443(1).

### 2.     Removal cannot be upheld under § 1443(2) or § 1442

Moore argues that removal of the collection actions was proper under § 1443(2).  Section 1443(2) provides that state court actions may be removed:

> For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443(2).

Moore also cites several federal statutes which he claims protect him from Harpagon's actions and authorize removal by virtue of his status as a *de facto* federal agent. *See* Def. Br. at 18 ("In seeking to assist federal agents by providing them information, Moore and the FXM Law Firm has been acting under color of authority").  Moore, however, is not being sued or prosecuted for any activities he may have carried out "under color of authority."  The collection actions seek satisfaction of a state court judgment, and the Court cannot discern the relevance of Moore's reporting of evidence of alleged felonies to federal law enforcement officials to the collection actions.  Accordingly, § 1443(2) does not apply and can not be relied upon for removal.

27

Additionally, removal is not, as Moore argues, proper under 28 U.S.C. § 1442, which provides for removal of actions against the United States or an officer of the United States. There is no evidence that Moore is an officer of the United States, and, as noted above, he is not being sued for any act under color of federal authority.

For these reasons, it is **RECOMMENDED** that Plaintiff Harpagon's Motions to Remand, No. 1146 [7] and No. 1319 [12], be **GRANTED** and that the cases numbered 1:09-CV-1146 and 1:09-CV-1319 be **REMANDED** to the Superior Court of Fulton County, Georgia.

### C.   Motion for Attorney's Fees

In each of its Motions to Remand, Harpagon has moved for attorney's fees incurred as a result of the removal of these cases. Pursuant to 28 U.S.C. § 1447(c), a remand order may require the payment of just costs and actual expenses, including attorney's fees. The Supreme Court has held that the award of fees is left to the district court's discretion. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).

The undersigned finds Moore's attempted removal of No. 1300 to be completely without merit and would recommend that, if this Report and

28

Recommendation is adopted, Defendants be allowed to prove and recover their attorney's fees and costs related to the attempted removal of that case.[7]

While Moore's efforts to remove Nos. 1146 and 1319 should, likewise, be found to be without merit, the arguments, at least, were worthy of consideration and the undersigned would recommend that Harpagon's request for attorney's fees and costs be **DENIED** in those cases.[8]

III.   **RECOMMENDATION**

Because a case may not be removed to this court by a plaintiff, and because the state court had already reached a final judgment in the case at the time of removal, it is **RECOMMENDED** that Case No. 1:09-CV-1300 be **REMANDED** to the Superior Court of Clayton County.  Additionally, because defendants Moore and FXM have not established a basis for the removal of Case Nos. 1:09-CV-1149 and 1:09-CV-

_____

[7]Harpagon has shown that as of the filing of its Motion to Remand, it had incurred $2,800.00 in attorney's fees.  Affidavit of Robert J. Proctor, Attachment 1 to Motion to Remand, No. 1300 [10].

[8]Arguments similar to Moore's were presented to the Third Circuit in *Davis v. Glanton*, 107 F.3d 1044 (3rd Cir. 1997), and it does not appear that that Court awarded attorney's fees upon remand.

29

1319, it is further **RECOMMENDED** that those cases be **REMANDED** to the Superior Court of Fulton County.

Finally, it is **RECOMMENDED** that Defendant Harpagon be permitted to prove and recover its attorney's fees and costs in connection with the attempted removal and ultimate remand of 1:09-CV-1300, but not in connection with 1:09-CV-1146 and 1:09-CV-1319.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned.  Accordingly, the Clerk is **DIRECTED** to terminate the reference of these matters to the undersigned.

**IT IS SO RECOMMENDED** this 30th day of July, 2009.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE